Filed 1/30/26  P. v. Garcia CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ESEQUIEL PAUL GARCIA,<br><br>　　　Defendant and Appellant. | H052185<br>(Santa Clara County<br>Super. Ct. No. CC800985) |

This appeal relates to a petition for resentencing that defendant Esequiel Paul Garcia filed under section 1172.6 (petition).

In 2010, a jury convicted Garcia of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189) and returned a true finding under the special circumstances statute (§ 190.2, subd. (c)).

In 2015, a different panel of this court affirmed the judgment on direct appeal.  (*People v. Garcia* (Mar. 2, 2015,, H036346) [nonpub. opn.] (*Garcia*).[2])

---

[1] All further unspecified statutory references are to the Penal Code.

[2] The direct appeal involved Garcia and his codefendants Miguel Chaidez and Lucio Estrada.  The *Garcia* opinion is included in the instant appellate record as an attachment to a pleading filed by the district attorney in the trial court.  The district attorney also attached to his pleading Garcia's abstract of judgment, the jury's verdict form regarding Garcia, and the final

In 2024, the trial court denied Garcia's petition at the prima facie stage, finding that Garcia is ineligible for section 1172.6 resentencing as a matter of law.

Garcia's appointed appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*).  Garcia filed a supplemental brief asserting that he had made the requisite prima facie showing of entitlement to relief under section 1172.6, subdivision (c) (section 1172.6(c)).

For the reasons explained below, we affirm the trial court's order denying Garcia's petition.

## I.  FACTS AND PROCEDURAL BACKGROUND

### A. *Trial Proceedings*

#### 1. Charges

In February 2009, the Santa Clara County District Attorney filed a first amended information (information) charging Garcia and his codefendants Chaidez and Estrada with the March 14, 2008[3] murder of Mark Achilli (§ 187).  As to Garcia, the information alleged that if Garcia was "not the actual killer" of Achilli, "with the intent to kill, [Garcia] did aid, abet, counsel, command, induce, solicit, request and assist[] the principal actor in the commission of murder in the first degree, within the meaning of Penal Code section 190.2[, subdivision] (c)" (section 190.2(c)).  As to Estrada, the information alleged that Estrada:  (1) in the commission of the offense, personally and intentionally discharged a firearm and proximately caused

---

jury instructions from trial.  The district attorney requested judicial notice of these documents.  Garcia has not pointed this court to any opposition he raised to the district attorney's request in the trial court.  Moreover, Garcia himself requested that the trial court take judicial notice of the underlying trial record and the court's file.  We have not located and Garcia has not pointed us to any ruling by the trial court on these judicial notice requests.

[3] Unless otherwise indicated, all dates were in 2008.

Achilli's death (§ 12022.53, subds. (b)–(d)); (2) intentionally murdered Achilli for financial gain (§ 190.2, subd. (a)(1)); and (3) intentionally killed Achilli by means of lying in wait (§ 190.2, subd. (a)(15)).

Garcia and his codefendants were tried together by jury in August– October 2010.  (*Garcia*, *supra*, H036346.)

2.  Trial Evidence

A description of the evidence presented at the joint trial of Garcia and his codefendants appears in the *Garcia* opinion.  We incorporate into this opinion the account of the trial evidence set forth in this court's prior opinion. (*Garcia*, *supra*, H036346.)

In brief, the trial evidence showed that victim Achilli owned a bar and dated one of his employees.  At about the same time, Achilli sold the bar and a restaurant to Garcia and Garcia began dating the employee.  Garcia and the employee had an off and on romantic relationship.  In January 2008, the employee told Garca she wanted to date Achilli.  That same month, Garcia asked a doorman at the bar, Daniel Chaidez (Daniel), if he " 'knew anyone who could get rid of a problem.' "  Daniel telephoned his cousin, codefendant Chaidez, who asked Daniel about the nature of the problem.  Daniel responded that the problem was a person.  A few days later, Chaidez called Daniel and said " 'it was possible.' "  After some negotiation, a price of $9,500 was agreed upon.  Daniel told Chaidez how to obtain a photograph of Achilli online.  (*Garcia*, *supra*, H036346.)

On March 11, Garcia gave Daniel $4,000 for the murder and said "he 'wanted this shit done.' "  The next day, Daniel wired $2,500 to Chaidez.  On March 13, Garcia gave Daniel $5,500 in cash in a paper bag.  Daniel called Chaidez and said that he (Daniel) had all the money.  Later, Chaidez

telephoned Daniel to tell him the shooter was en route. (*Garcia*, *supra*, H036346.)

Shortly before noon on March 14, someone shot Achilli to death in the carport of his home. A few minutes before noon, Chaidez called Daniel and told him that the mission was accomplished. They met later and Daniel gave Chaidez $6,500. (*Garcia*, *supra*, H036346.)

During the police investigation, officers recovered the murder weapon, a baseball cap, gloves with gunshot residue, a jacket, a torn photograph of Achilli, and a page of printed driving directions to Achilli's home address. The fingerprints on the driving directions belonged to Estrada and Chaidez's brother, Cesar Chaidez. The major DNA profile on the baseball cap, one of the gloves, and the jacket matched Estrada. Police found a book entitled " 'Hit Man A Technical Manual for Independent Contractors' " during a search of Estrada's apartment. (*Garcia*, *supra*, H036346.)

Garcia testified that he did not hire Daniel to arrange Achilli's murder or give Daniel $9,500. Garcia further stated he had nothing to do with the murder and never asked anyone to harm Achilli. Garcia explained that he withdrew large amounts of cash from bank accounts around the time of the crime for business reasons. (*Garcia*, *supra*, H036346.)

3. Jury Instructions

Regarding count 1 (murder; § 187), the trial court instructed the jurors that "[t]o prove the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] [AND] [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] . . . It is a mental state that must be formed before the act that causes death is committed. It does not require

4

deliberation or the passage of any particular period of time."[4]  (CALCRIM No. 520.)

Regarding the degrees of the murder (§ 189), the trial court instructed the jurors:  "If you decide that the defendant has committed murder, you must decide whether it is murder of the first degree.  [¶]  The defendants have been prosecuted for first degree murder under two theories:  (1) 'the murder was willful, deliberate, and premeditated' and (2) 'the murder was committed by lying in wait.' "  (CALCRIM No. 521.)  The court also instructed the jurors on the requirements for each theory and stated:  "You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder.  But all of you do not need to agree on the same theory."  (*Ibid.*)

Regarding liability for aiding and abetting, the trial court instructed the jurors with CALCRIM Nos. 400 and 401 as follows:  "A person may be guilty of a crime in two ways.  One, he or she may have directly committed the crime.  I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator who directly committed the crime.  [¶]  A person is equally guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."  (CALCRIM No. 400.)

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:  [¶]  1.  The perpetrator committed the crime;  [¶]  2.  The defendant knew that the perpetrator intended to commit the crime;  [¶]  3.  Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;  [¶]  AND  [¶]  4.  The defendant's words or conduct did, in fact, aid

---

[4] The murder instruction did not include any discussion of implied malice—only express malice/intent to kill.  (See § 188, subd. (a).)

5

and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does, in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor. [¶] If you concluded that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor. [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw. If the People have not met this burden, you may not find the defendant guilty under an aiding and abetting theory." (CALCRIM No. 401.)

Regarding liability based on evidence of an uncharged conspiracy, the trial court instructed the jurors, in pertinent part, as follows: "The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy. [¶] To prove that a defendant was a member of a conspiracy in this case, the People must prove that: [¶] 1. The defendant intended to agree and did agree with one or more of the other defendants or accomplices to commit murder; [¶] 2. At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder; [¶] 3. One of the defendants or accomplices, or all of them committed at least one of the following overt acts to accomplish murder: [¶]

6

[Six overt acts described.] [¶] AND [¶] 4. At least one of these overt acts was committed in California. [¶] . . . [¶] To decide whether a defendant and one or more of the alleged members of the conspiracy intended to commit murder, please refer to the separate instructions I will give you on that crime. [¶] The People must prove that the members of the alleged conspiracy had an agreement and intent to commit murder. The People do not have to prove that any of the members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit that crime. An agreement may be inferred from conduct if you conclude that members of the alleged conspiracy acted with a common purpose to commit the crime. [¶] . . . [¶] You must decide as to each defendant whether he was a member of the alleged conspiracy. [¶] The People contend that the defendants conspired to commit murder. You may not find a defendant guilty under a conspiracy theory unless all of you agree that the People have proved that the defendant conspired to commit murder. You must also all agree on the degree of the crime. [¶] A member of a conspiracy does not have to personally know the identity or roles of all the other members. [¶] Someone who merely accompanies or associates with members of a conspiracy but who does not intend to commit the crime is not a member of the conspiracy. [¶] Evidence that a person did an act or made a statement that helped accomplish the goal of the conspiracy is not enough, by itself, to prove that the person was a member of the conspiracy." (CALCRIM No. 416.)

Regarding the special circumstances (§ 190.2), the trial court instructed the jurors that if they find a defendant guilty of first degree murder, they "must also decide whether the People have proved that one or more of the special circumstances is true." (CALCRIM No. 700.) The court also

7

instructed that the jurors "must consider each special circumstance separately." (*Ibid.*)

As to the special circumstance for Garcia, the trial court read the allegation stated in the information. In addition, the court instructed the jurors: "If you decide that Esequiel Paul Garcia is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of aid, abet, command, solicit, request, or induce, under Pen[al] Code [section] 190.2(a), you must also decide whether the defendant acted with the intent to kill. [¶] In order to prove this special circumstance for a defendant who is not the actual killer, but who is guilty of first degree murder as an aider and abettor or a member of a conspiracy, the People must prove that the defendant acted with the intent to kill. [¶] The People do not have to prove that the actual killer acted with the intent to kill in order for this special circumstance to be true. [¶] If Esequiel Paul Garcia was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstance of aid, abet, command, solicit, request, or induce under Pen[al] Code [section] 190.2(a) to be true. If the People have not met this burden, you must find this special circumstance as not been proved true." (CALCRIM No. 702.)

The trial court further instructed the jurors that "[i]n order to prove the special circumstances of lying in wait, financial gain, or aid, abet, command, solicit, request, or induce, the People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state. The instruction for each special circumstance explains the intent or mental state required." (CALCRIM No. 705.) The instructions on the financial gain special circumstance (§ 190.2, subd. (a)(1)) and the lying in wait special circumstance (§ 190.2, subd. (a)(15)) noted that Estrada was the

person charged with violating those special circumstances. (See CALCRIM Nos. 720 & 728.)

4. Verdict and Sentence

On October 26, 2010, the jury found Garcia guilty of murder (count 1) and further found that the murder was in the first degree. The verdict form states: "We, the jury, in the above entitled cause find the defendant, Esequiel Paul Garcia, guilty of Penal Code section 187, a crime, on or about March 14, 2008, as charged in count [1] of the information. [¶] We the jury, find the crime to be murder in the first degree." (Capitalization omitted.) As for the information's allegation under the special circumstances statute, the verdict form states: "We, the [j]ury, having found the defendant guilty of count [1] further find the allegation that defendant, Esequiel Paul Garcia, if not the actual killer, with the intent to kill, did aid, abet, counsel, command, induce, solicit, request, and assist, the principal actor in the commission of murder in the first degree, within the meaning of Penal Code section 190.2(c) to be[] true."[5] (Capitalization omitted.)

In May 2012, the trial court sentenced Garcia to life in prison without the possibility of parole (LWOP).[6]

B. *Direct Appeal*

On direct appeal, Garcia raised several claims alleging ineffective assistance of his trial counsel and a challenge to the trial court's refusal to give a limiting jury instruction regarding Chaidez's confession. (*Garcia, supra*, H036346.)

---

[5] The jury also convicted Chaidez and Estrada of first degree murder on count 1 and found the attached allegations for Estrada true.

[6] The trial court additionally sentenced Chaidez to 25 years to life in prison and Estrada to LWOP consecutive to 25 years to life.

In March 2015, this court affirmed the judgment against Garcia in full (as well as the judgments against Chaidez and Estrada). (*Garcia, supra,* H036346.)

C. *Petition for Resentencing*

In December 2022, Garcia, on his own behalf, submitted a section 1172.6 resentencing petition to the trial court. Garcia claimed, inter alia, that he is eligible for relief under section 1172.6, subdivision (a) and made the requisite prima facie case showing.

In January 2023, Garcia filed a supplement to his petition. He asserted, inter alia, that the jury instructions permitted the jurors to convict him under a theory of imputed malice. In February 2023, Garcia filed a motion to represent himself in the proceedings on his petition.

In April 2023, the district attorney filed a response opposing Garcia's petition (response). The district attorney conceded "[t]here is no question that [Garcia] was not the actual killer." The district attorney contended Garcia had not been convicted of felony murder or murder under the natural and probable consequences doctrine or any other theory that could impute malice to him. The district attorney further noted that Garcia's jury was not instructed on implied malice for murder, "only an intentional killing as [the] theory of murder whether by way of conspiracy or direct aiding and abetting." The district attorney asserted that Garcia was ineligible for relief under section 1172.6 as a matter of law because he "was tried and convicted on a theory of conspiracy to kill and aiding and abetting an intentional murder. Necessarily included in the murder verdict was an intent to kill because that was required for the conspiracy and the aiding and abetting theory." The district attorney further contended that the jury "concluded [Garcia] had an intent to kill when it found the special circumstance to be true."

In October 2023, Garcia, through retained counsel, filed a reply to the district attorney's response. Garcia argued that the verdict form did not require a finding of personal intent to kill or offer an alternative to finding a degree of murder other than first degree, the jury instructions for aiding and abetting and lying in wait first degree murder allowed the jury to impute malice to him, the jury instructions failed to link the uncharged conspiracy to the substantive murder offense, and the jury made no finding against Garcia on any valid special circumstance identified in section 190.2, subdivision (a).[7]

In February 2024, the trial court held a hearing on Garcia's petition and heard oral arguments from Garcia's counsel and the prosecutor.

On April 18, 2024, the trial court issued a written order denying the petition. The court noted that the jurors were "instructed that they had to find the elements of murder, which included the intent to kill, *before* deciding the degree of murder. The jury was also instructed that to prove a special circumstance true for a defendant who was not the actual killer, the People had to prove that the defendant acted with the intent to kill." The court explained: "Prior to reaching the question of degree [of murder] or the special circumstance, the jury had to consider intent to kill based on the uncharged conspiracy and aiding and abetting instructions, which in turn directed the jury to the requirements of express malice murder. Whether the jury convicted [Garcia] of murder based on an uncharged conspiracy or aiding and

---

[7] The appellate record indicates that Garcia concurrently filed a habeas corpus petition in the trial court challenging the propriety of the jury's special circumstance finding and his LWOP sentence. The trial court denied that petition in November 2023. Garcia subsequently filed a habeas corpus petition in this court. (*In re Esequiel Paul Garcia*, H051778.) On August 12, 2024, this court summarily denied Garcia's habeas corpus petition. On our own motion, we take judicial notice of that order. (See Evid. Code, §§ 452, subd. (d), 459.)

abetting theory, the jury necessarily found that [Garcia] personally possessed the intent to kill." The court additionally explained that before finding true the special circumstance allegation, the jurors necessarily found that Garcia possessed an intent to kill.

The trial court concluded: "[T]he court finds that [Garcia] failed to make a prima facie showing that he is entitled to relief because the record of conviction conclusively demonstrates that [Garcia] was not convicted of either murder or attempted murder under a now-invalid theory. Therefore, [Garcia] is ineligible as a matter of law for resentencing pursuant to Penal Code section 1172.6."

## II. DISCUSSION

Where, as here, appellate counsel finds no arguable issues in an appeal from the denial of a section 1172.6 petition, we are not required to conduct an independent review of the record. (See *Delgadillo*, *supra*, 14 Cal.5th at pp. 224–231.) We give the defendant the opportunity to file his or her own supplemental brief, and we then evaluate the specific arguments raised. (*Id.* at pp. 231–232.) As Garcia has filed a supplemental brief, we now consider his contentions.

Broadly stated, Garcia asserts that: (1) the verdict form did not establish the theory of liability relied on by the jury in rendering its verdict on count 1 (murder); (2) no valid special circumstance was charged, instructed on, or found true by the jury; (3) not all the elements of section 189, subdivision (e) were met; (4) the jury instruction on conspiracy to commit murder was unconnected to the jury's task of deciding guilt on the murder charge; (5) the jury instructions on aiding and abetting and lying in wait allowed the jurors to impute malice; (6) new and additional evidence supports Garcia's petition; (7) the prosecution could have proceeded on a theory of

12

felony murder as evidenced by the plea agreements of Daniel Chaidez and Robert Jacome;[8] (8) the prosecution utilized inconsistent theories of drug debt collection-robbery and "love triangle" in prosecuting the perpetrators of the crime; and (9) Garcia's trial counsel did not want to raise the felony murder theory by calling Jacome to testify at trial because it could have opened the door to an additional theory of liability under then-current law.

A. *Legal Principles*

1. <u>Section 1172.6</u>

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019.  (See Stats. 2018, ch. 1015, § 4.)  "With the goal of 'more equitably sentenc[ing] offenders in accordance with their involvement in homicides' [citation], Senate Bill 1437 significantly changed the scope of murder liability for defendants who did not actually kill or intend to kill anyone, including those prosecuted on a felony-murder theory."  (*People v. Wilson* (2023) 14 Cal.5th 839, 868 (*Wilson*).)  "The bill also altered murder liability under the natural and probable consequences doctrine."  (*Id.* at p. 868, fn. 8; see § 188.)

---

[8] According to the *Garcia* opinion, "Robert Jacome testified at the preliminary examination in this case.  He said that he drove Estrada from Southern California to Northern California on March 13, 2008, they stayed in a hotel that night.  The next morning, he drove Estrada to somewhere off Highway 9.  Later that morning, he received a telephone call from Estrada during which Estrada sounded panicked and told Jacome to pick him up.  When Jacome saw Estrada again he was running toward Jacome's car.  Estrada was wearing different clothes." (*Garcia, supra,* H036346.)  "Jacome [also] testified that he thought it was going to be a robbery—a debt collection.  He had no idea that there was going to be a murder."  (*Ibid.*)  "Jacome testified pursuant to a plea agreement; the terms of the agreement were that he would plead guilty to lesser charges in this case in exchange for a maximum prison sentence of six years and eight months in exchange for his truthful testimony."  (*Ibid.*)  "Jacome did not testify at the trial."  (*Ibid.*)

13

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) When the trial court receives a petition under section 1172.6 requesting vacatur of a murder conviction and resentencing, and "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, at p. 708, citing *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*), § 1172.6, subd. (c); see also *People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*).)

During the prima facie stage of review, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971; see also *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [record of conviction includes jury instructions].) The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Lewis*, at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid*.) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to

14

the petitioner.' ' " (*Ibid.*; see also *People v. Patton* (2025) 17 Cal.5th 549, 562–567 (*Patton*).)

"[A] relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*Curiel, supra,* 15 Cal.5th at pp. 453–454.)

### 2. Relevant Murder Law

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187.)  Section 188 (as amended by Senate Bill 1437) provides in relevant part: "(a) For purposes of [s]ection 187, malice may be express or implied.  [¶]  (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature.  [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶]  (3) Except as stated in subdivision (e) of [s]ection 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.  [¶]  (b) If it is shown that the killing resulted from an intentional act with express or implied malice . . . no other mental state need be shown to establish the mental state of malice aforethought."  (See also *Curiel, supra,* 15 Cal.5th at pp. 448–449 [explaining Senate Bill 1437's changes to murder law].)

### a. Liability for Direct Aiding and Abetting

"Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848, superseded by

15

statute on another ground as stated in *Wilson*, *supra*, 14 Cal.5th at p. 869; see *Curiel*, *supra*, 15 Cal.5th at p. 462 ["The Legislature sought to limit murder liability to established theories that incorporated the requisite intent."].) "Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts and had the requisite intent' to aid and abet the target crime of murder. [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.' " (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 124, quoting *People v. McCoy* (2001) 25 Cal.4th 1111, 1116–1117 (*McCoy*).)

   b.  Conspiracy Liability

"The doctrine of conspiracy plays a dual role in our criminal law. First, conspiracy is a substantive offense in itself—'an agreement between two or more persons that they will commit an unlawful object (or achieve a lawful object by unlawful means), and in furtherance of the agreement, have committed one overt act toward the achievement of their objective.' [Citations.] Second, proof of a conspiracy serves to impose criminal liability on all conspirators for crimes committed in furtherance of the conspiracy." (*People v. Salcedo* (1994) 30 Cal.App.4th 209, 215; *People v. Valdez* (2012) 55 Cal.4th 82, 150 ["Our decisions have 'long and firmly established that an uncharged conspiracy may properly be used to prove criminal liability for acts of a coconspirator.' "].)

"Although murder liability is divided into different degrees and can rest on different theories [citation], conspiracy to commit murder can only take a single form: It 'requires a finding of unlawful intent to kill, i.e., express malice' [citation] and 'is necessarily conspiracy to commit premeditated and

16

deliberated first degree murder.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167.)

### 3. Standard of Review

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage." (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.) If the denial of the resentencing petition was legally correct, we affirm that denial regardless of the trial court's reasoning. (*People v. Camacho* (2022) 14 Cal.5th 77, 123; see *People v. Cortes* (2022) 75 Cal.App.5th 198, 204 (*Cortes*) [declining to address the trial court's reasons for denying the petition because a reviewing court "may affirm a ruling that is correct in law on any ground"].)

### B. *Analysis*

The instant record of conviction conclusively shows that Garcia is ineligible for relief under section 1172.6 as a matter of law.

At Garcia's trial, the jury received no instruction on felony murder, the natural and probable consequences doctrine, or implied malice. As detailed *ante* (see pt. I.A.3.), the trial court instructed the jurors that the crime of murder required proof that the defendant "*unlawfully intended to kill.*" (Italics added.) The court also instructed the jurors on only two theories of murder liability that applied to Garcia as a non-actual killer: direct aiding and abetting, and conspiracy. As explained below, both theories required that the jury find Garcia personally harbored an intent to kill. Further, the court's instruction regarding whether the murder was in the first degree told the jurors that they had to make that decision "*[i]f you decide that the defendant has committed murder*" and that they "may not find the defendant guilty of first degree murder *unless all of you agree that the People have proved that the defendant committed murder.*" (Italics added.)

17

The trial court's instructions on aiding and abetting told the jurors that the People had to prove, inter alia, Garcia "knew that the perpetrator intended to commit the crime" (i.e., murder), "intended to aid and abet the perpetrator in committing the crime," and "did, in fact, aid and abet the perpetrator's commission of the crime," such that Garcia "knows of the perpetrator's unlawful purpose and he . . . specifically intends to, and does, in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." These instructions conveyed that Garcia had to "know and share the murderous intent of the actual perpetrator" (*McCoy*, supra, 25 Cal.4th at p. 1118), namely a specific intent to kill.

The trial court's instruction on conspiracy explicitly referenced the crime of murder (which included only the intent to kill requirement for malice aforethought). The conspiracy instruction mandated that the People prove, inter alia, Garcia "intended to agree and did agree with one or more of [his alleged coconspirators] to commit murder" and that "[a]t the time of the agreement, [Garcia] and one or more of the other alleged members of the conspiracy *intended that one or more of them would commit murder*." (Italics added.) The instruction also directed that "[t]he People must prove that the members of the alleged conspiracy had an agreement and intent to commit murder."

The jury's verdict form establishes that the jurors found Garcia guilty of murder under section 187 as charged in count 1. However, the verdict form itself does not show which theory of murder liability the jurors adopted in returning a unanimous verdict on the murder charge. That ambiguity regarding the theory of murder liability does not alter the conclusion that Garcia is ineligible for relief under section 1172.6. If the jurors convicted Garcia of murder based on the aiding and abetting theory of liability, Garcia

18

is ineligible for relief because the jurors would have had to conclude that he harbored the intent to kill.  (See *People v. Allen* (2023) 97 Cal.App.5th 389, 395; *Cortes, supra*, 75 Cal.App.5th at p. 204; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945.)  If the jurors convicted Garcia of murder under the conspiracy theory of liability, Garcia is ineligible for relief because to conclude that Garcia conspired to commit murder, the jurors were required to find that he harbored the intent to kill.  (See *Allen*, at pp. 395–396; *People v. Nguyen* (2024) 103 Cal.App.5th 668, 678–679.)

We conclude the instant instructions and verdict form conclusively show that before the jurors fixed the degree of murder at first degree, they convicted Garcia of murder (§ 187, subd. (a)) based on his own intent to kill as a direct aider or abettor or as a member of a conspiracy to commit murder. The trial record makes clear that Garcia was not convicted of murder under any now-invalid theory and malice was not imputed to him based solely on his participation in a crime.  (§ 188, subd. (a)(3); § 1172.6, subd. (a).)  We thus uphold the trial court's finding that Garcia is ineligible for relief under section 1172.6.

Because we uphold the trial court's denial of the petition based on the murder verdict itself, we need not consider Garcia's arguments regarding the alleged invalidity of the jury's special circumstances finding, the elements of section 189, subdivision (e) (governing felony murder), the alleged imputation of malice under the lying in wait theory of first degree murder, the prosecution's alleged ability to have proceeded on a theory of felony murder, the prosecution's alleged use of inconsistent theories, and trial counsel's alleged avoidance of the felony murder theory at trial.  These arguments do not undermine our conclusion that Garcia was convicted of murder solely on a theory that is still valid under Senate Bill 1437.  Furthermore, to the extent

that these arguments allege trial or sentencing error, they are not cognizable on a section 1172.6 resentencing petition or in this appeal. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

Lastly, we are not persuaded by Garcia's assertion that he was entitled to present new and additional evidence supporting his petition at the prima facie stage under section 1172.6. By its terms, section 1172.6 only allows the parties to present new or additional evidence at the evidentiary hearing stage of the process. (§ 1172.6, subd. (d)(3).) The statute does not contemplate the presentation of new evidence at the prima facie stage. (§ 1172.6, subd. (c); see also *Lewis*, *supra*, 11 Cal.5th at p. 972 ["In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "].) The words of the statute do not support Garcia's assertion. (See *People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [a statute's words "are the most reliable indicator of legislative intent"].) We may not rewrite the statute. (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 392.) Moreover, even if a trial court should consider a defendant's specific factual allegations involving new and additional evidence at the prima facie stage (see *Patton*, *supra*, 17 Cal.5th at pp. 564–569), Garcia's allegations do not create a material factual dispute about whether his conviction was rendered under a still valid theory of murder.

In sum, the trial court properly denied Garcia's petition without issuing an order to show cause (§ 1172.6, subd. (c)), and Garcia raises no issue having a reasonable potential for success on appeal in his supplemental brief.

## III.  DISPOSITION

The trial court's April 18, 2024 order denying Garcia's Penal Code section 1172.6 petition is affirmed.

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H052185**
***People v. Garcia***